E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section
VICTOR A. RODGERS (Cal. Bar No. 101281)
Assistant United States Attorney
Asset Forfeiture Section
    United States Courthouse, 14th Floor
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2569
    Facsimile: (213) 894-0142
    E-mail: Victor.Rodgers@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| UNITED STATES OF AMERICA, | Case No. 2:22-cv-07459 |
|---|---|
| Plaintiff, | COMPLAINT FOR FORFEITURE |
| v. | 18 U.S.C. §§ 981(a)(1)(A) and (C) and 984 |
| $1,037,449.63 SEIZED FROM ONE BANK OF AMERICA ACCOUNT, | [HSI] |
| Defendant. | |

    Plaintiff United States of America brings this claim against

defendant $1,037,449.63 Seized From One Bank Of America Account, and

alleges as follows:

JURISDICTION AND VENUE

    1.    The government brings this in rem forfeiture action

pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C) and 984.

2.   This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3.   Venue lies in this district pursuant to 28 U.S.C. § 1395.

### PERSONS AND ENTITIES

4.   The plaintiff in this action is the United States of America.

5.   The defendant in this action is $1,037,449.63 Seized From One Bank Of America Account (the "defendant bank funds") seized pursuant to a federal seizure warrant on or about January 5, 2021 at the Bank of America ("BofA") branch located at 15742 Whittier Boulevard, Whittier, California 90603, from a business BofA account with the last four digits ending in 9701 (the "9701 Account") and in the name of Inessa Asatryan dba Design Studio Essa.  Bank records reflect that Inessa Asatryan had signature authority over the 9701 Account, but in fact the 9701 Account was used and controlled by Khachatur Khachatryan in furtherance of his fraud scheme discussed below.

6.   The defendant bank funds are currently in the custody of the United States Customs and Border Protection, Department of Homeland Security in this District, where they will remain subject to this Court's jurisdiction during the pendency of this action.

7.   The interests of Inessa Asatryan, Inessa Asatryan dba Design Studio Essa, Khachatur Khachatryan, the Small Business Administration (the "SBA") and BofA may be adversely affected by these proceedings.

/ / /

/ / /

/ / /

BASIS FOR FORFEITURE

Description Of The Paycheck Protection Program

8.    The Coronavirus Aid, Relief, and Economic Security Act, which is also known as the CARES Act, is a federal law enacted around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").  Around April 2020, Congress authorized over $300 billion in additional PPP funding.

9.    In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business.  The PPP loan application requires the business, through its authorized representative, to acknowledge the Program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  One such certification requires the applicant, through its authorized representative, to affirm that:

> [t]he [PPP loan] funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments; I understand that if the funds are used for unauthorized purposes, the federal government may pursue criminal fraud charges.

10.   In addition, the business, through its authorized representative, must state, among other things, the company's number of employees and average monthly payroll expenses, and provide

documentation showing the company's payroll expenses.  The employee and payroll expense numbers are used to calculate the amount of money the business is eligible to receive under the PPP.

11.   In the first instance, the company's PPP loan application is received and processed by a participating financial institution, and then the application is transmitted to the Small Business Administration, or SBA for further review and assessment of the applicant's eligibility.  If a PPP loan application is approved, the participating financial institution funds the PPP loan using the financial institution's own monies.

12.   PPP loan proceeds must be used by the business on certain permissible expenses, namely payroll costs, interest on mortgages, rent and utilities.  The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time (usually eight weeks of receiving the proceeds) and uses at least 75% of the PPP loan proceeds on payroll expenses.

The Submission Of A Fraudulent Loan Application Seeking a PPP and Economic Injury Disaster Loan Using A Stolen Identity

13.   In or around June 2020, a loan application in the name of Design Studio Essa and purportedly signed by Asatryan (whose name was apparently stolen and used by Khachatryan in furtherance of his fraud scheme) was submitted to BofA.  The loan application sought a PPP and Economic Injury Disaster Loan ("EIDL") loan for $1,038,445.00. According to the loan application, Design Studio Essa was a web design company that reported an average monthly payroll expense of $351,418 and had 81 employees.  In addition, the application listed Asatryan as the principal of Design Studio Essa and claimed Design

Studio Essa had been in operation on dates prior to February 15, 2020, which is the cutoff date to obtain SBA relief funds.   The application also listed Design Studio Essa'a address as an apartment in Glendale, California,[1] which according to the California Department of Motor Vehicles was associated with Asatryan.

14.   In addition, the application was submitted with two tax forms: an IRS Form 941 for 2020 – Employer's Quarterly Federal Tax, and am IRS Form 940 for 2019 – Employer's Annual Federal Unemployment (FUTA) Tax Return.   The IRS Form 941 was dated April 8, 2020, and claimed Design Studio Essa's first quarter tax year 2020 wages totaled $1,054,254.03.   The IRS Form 940 was dated January 12, 2020, and claimed Design Studio Essa was in operation in 2019 and paid $4,217,016.12 to Design Studio Essa's employees in 2019.   Both IRS forms were submitted to BofA unsigned, with the wording "Employer Copy" added at the bottom of the forms.   The IRS forms set forth a number that the loan submitter claimed was Design Studio Essa's Employer Identification Number.

15.   Law enforcement officers searched government databases, and as a result learned that Asatryan did not appear to be the person who submitted the loan application.   The government database search revealed the following.   Asatryan was an Armenian national whose last entry into the United States occurred on or about December 12, 2017 as a tourist with a B–2 non-immigrant visa which allowed her to remain in the United States until December 10, 2019.   She remained in the United States for approximately two years until she left on or about September 19, 2019.   Between September 19, 2019 and the time

---

[1] Pursuant to the Local Rules, only the city and state of personal residence addresses are set forth in this Complaint.

1   the Design Studio Essa loan was funded by BofA and the SBA, Asatryan
2   had not returned to the United States.  Accordingly, at the time
3   Design Studio Essa submitted the loan application in June 2020 and
4   the loan was funded, Asatryan was out of legal immigration status in
5   the United States and was therefore ineligible for employment or any
6   business venture in the United States.

7   The Evidence Shows That False Statements Were Made In The Loan
8   Application

9                  Design Studio Essa Has No Public Presence

10        16.   Design Studio Essa does not have anywhere near the number
11   of employees or payroll expenses reflected in the June 2020 loan
12   application.  Instead, Design Studio Essa appears to be a shell
13   business.  Officers searched public websites Google and Yelp
14   regarding Design Studio Essa, but those searches did not reveal any
15   online presence or information related to any web design company
16   matching the information in the Design Studio Essa loan application.
17   (As set forth above, the loan application provided that Design Studio
18   Essa was a web design company with 81 employees and monthly payroll
19   expense of $351,418).  In addition, California Secretary of State
20   records did not reflect any article of incorporation records for
21   Design Studio Essa.

22                Design Studio Essa's Employer Identification
23                  Number Was Created In June 2020, Which Is
24                 The Same Month The Design Studio Essa Loan
25                      Application Was Submitted

26        17.   Design Studio Essa's Employer Identification Number was
27   created in or about June 2020, which is when the Design Studio Essa
28   loan application was sent to BofA.  However, the IRS Form 940 (dated

                                    6

April 8, 2020) and IRS Form 941 (dated January 12, 2020), discussed above, submitted with the loan application claims the Employer Identification Number was in use on the dates reflected on the IRS forms (i.e., January 12 and April 8, 2020), when in fact the number was not even created until June 2020.  Furthermore, the loan application provides that Design Studio Essa's 2019 monthly payroll was $351,418 and 2019 yearly payroll exceeded $4.2 million, yet in 2019 Design Studio Essa had not even obtained an Employer Identification Number.

The California Employment Development Department

Has No Records Regarding Design Studio Essa

18.   The California Employment Development Department is the California State Agency to which California employers must report wages paid to their employees.  Despite the over $4 million in wages claimed in the loan application as having been paid by Design Studio Essa to its employees in 2019, the California Employment Development Department has no record of any wages having been paid to Design Studio Essa employees.

BofA And The SBA Fund The Design Studio Essa June 2020 Loan

19.   Bank records reveal the following.  The 9701 Account was opened on or about July 17, 2018 in the name of Inessa Asatryan dba Design Studio Essa, was opened at a BofA branch in Glendale, California, and Asatryan had signature authority over the account. Before the SBA and BofA funded the PPP/EIDL loan (as discussed below), the 9701 Account had an average balance that did not exceed $50.00, the account was largely dormant, the transaction activity in the account reflected no expenses consistent with an active web

/ / /

design company and no payroll payments had been made from the account.

20.  On or about June 22, 2020, the SBA began funding the loan by making loan disbursements into the 9701 Account.  On or about June 22, 2020, SBA funded an initial $10,000.00 EIDL credit, which was an advance that EIDL provides to assist businesses while their loan application is being processed.  Then, on June 26, 2020, the SBA made a $149,900.00 disbursement into the 9701 Account.  On or about July 17, 2020, BofA then disbursed $878,545.00 into the 9701 Account. Accordingly, the total funds paid into the 9701 Account were $1,038,445.00 ($10,000.00 + $149,900.00 + $878,545.00).  As reflected above, the government seized $1,037,449.63 from the account.

Khachatryan Withdrew Or Transferred Funds From The 9701 Account
Shortly After BofA Funded The Remaining $878,545.00 Of The Loan

21.  As reflected above, on July 17, 2020, BofA transmitted $878,545 into the 9701 Account.  A few days later, someone authorized the electronic transfer of $322.32 from the 9701 Account into Asatryan's personal BofA account.  BofA ATM video footage (and photographs thereof) show that on July 21, 2020, Khachatryan withdrew a total of $1,080.00 in cash (first $500.00 and then $580.00 in cash) from a BofA ATM in Glendale, California.  Bank records reflect that the $1,080.00 was withdrawn from Asatryan's personal BofA account.

22.  In addition, bank statements for Asatryan's personal BofA account reflect, between March and June 2020, multiple Zelle payments debited from that account listing Khachatryan's name in the payment description.

/ / /

/ / /

### FIRST CLAIM FOR RELIEF

23.   Plaintiff incorporates the allegations of paragraphs 1-22 above as though fully set forth herein.

24.   Based on the above, plaintiff United States of America alleges that the defendant bank funds constitute or are derived from proceeds traceable to, or a conspiracy to commit violations of 18 U.S.C. §§ 1343 (wire fraud) and 1344 (bank fraud), both of which are specified unlawful activities as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B), and 18 U.S.C. § 1349 (attempt and conspiracy).   The defendant bank funds are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and/or (C).   In addition, to the extent that the defendant bank funds are not the actual monies directly traceable to the illegal activity identified herein, plaintiff United States of America alleges that the defendant bank funds are identical property found in the same account or place as the property involved in the specified offense, rendering the defendant bank funds subject to forfeiture pursuant to 18 U.S.C. § 984.

### SECOND CLAIM FOR RELIEF

25.   Plaintiff incorporates the allegations of paragraphs 1-22 above as though fully set forth herein.

26.   Based on the above, plaintiff alleges that the defendant bank funds constitute property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(A)(i) or (a)(1)(B)(i), or property traceable to such property, with the specified unlawful activity being violations of 18 U.S.C. §§ 1343 (wire fraud) and/or 1344 (bank fraud).   The defendant bank funds are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

In addition, to the extent that the defendant bank funds are not the actual monies directly traceable to the illegal activity identified herein, plaintiff United States of America alleges that the defendant bank funds are identical property found in the same account or place as the property involved in the specified offense, rendering the defendant bank funds subject to forfeiture pursuant to 18 U.S.C. § 984.

WHEREFORE, plaintiff United States of America prays:

(a)   that due process issue to enforce the forfeiture of the defendant bank funds;

(b)   that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c)   that this Court decree forfeiture of the defendant bank funds to the United States of America for disposition according to law; and

(d)   for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: October 13, 2022

E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section


            /s/ Victor A. Rodgers
VICTOR A. RODGERS
Assistant United States Attorney
Asset Forfeiture Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA

VERIFICATION

I, Alfredo Rossi, hereby declare that:

1.   I am a Special Agent with the Homeland Security Investigations ("HSI").

2.   I have read the above Complaint for Forfeiture and know the contents thereof.

3.   The information contained in the Complaint is either known to me personally, was furnished to me by official government sources, or was obtained pursuant to subpoena.  I am informed and believe that the allegations set out in the Complaint are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October  12 , 2022 at Los Angeles, California.

*Alfredo Rossi*

ALFREDO ROSSI

11